# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY D. BASS, | ) |
| Plaintiff, | ) |
| v. | ) No. 6:18-03356-CV-RK |
| COMMISSIONER OF SSA; | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **REVERSED** and **REMANDED**.

## Standard of Review

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v.*

*Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)). The Court must "defer heavily to the findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

By way of overview, the ALJ determined Plaintiff suffered from the following severe impairments: seizure disorder variously diagnosed as epilepsy and as transient ischemic attack ("TIA"), lumbar and cervical degenerative disc disease, and left shoulder osteoarthritis. The ALJ also determined that Plaintiff has the following non-severe impairments: hyperlipidemia, gastric ulcer, cholecystectomy, and depression. However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing"). Additionally, the ALJ found that despite his limitations, Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday. He can occasionally climb, balance, stoop, kneel, crouch, and crawl. He should avoid constant overhead reaching with the left arm but can frequently reach overhead with the left arm. He cannot climb ladders, ropes, scaffolds, and must avoid exposure to hazardous conditions such as unprotected heights and moving machinery. Although the ALJ found that Plaintiff is unable to perform any past relevant work, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff can perform jobs that exist in significant numbers in the national economy.

On appeal, Plaintiff argues the ALJ erred in evaluating his RFC and the ALJ erred in evaluating his subjective symptoms. The Court will address each in turn.

### I. The ALJ Erred in Evaluating Plaintiff's RFC

A claimant's RFC is the most he can do despite the combined effects of his limitations. 20 C.F.R. §§ 404.1545, 416. 945. It is the plaintiff's burden to prove his RFC, and the ALJ must determine the RFC based on all relevant evidence in the record. *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016). The determination of a plaintiff's RFC at the administrative hearing level is the responsibility of the ALJ alone. *Kamman v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). Evidence relevant to the RFC determination includes medical records, observations of treating physicians and others, and a plaintiff's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citation omitted). The RFC determination must be supported by

substantial evidence, including at least some medical evidence. *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000). Where an ALJ fails to support the RFC with medical evidence, it cannot be said the resulting RFC is supported by substantial evidence. *Hallstrom v. Massanari*, 270 F.3d 715, 722 (8th Cir. 2001). However, an ALJ is not required "to mechanically list and reject every possible limitation." *Nash v. Comm'r Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018) (quotation omitted); *Peterson v. Colvin*, 2013 WL 6237868, at *4 (W.D. Mo. Dec. 3, 2013) ("Plaintiff overstates the law by contending there must be medical evidence that precisely supports each component of the RFC.")

### A. The ALJ Did Not Err in Evaluating Plaintiff's Spine Conditions

Plaintiff first argues the ALJ erred in evaluating Plaintiff's disc disease and osteoarthritis ("OA"). Plaintiff's argument asserts the ALJ failed to consider evidence concerning Plaintiff's spine condition after the onset date and that the record does not contain medical evidence from which a proper determination of Plaintiff's functional limitations can be made. This argument is without merit. First, the ALJ's RFC decision takes into account Plaintiff's severe degenerative disc disease and left shoulder OA. (Tr. 31.) Second, there was substantial evidence that undermined the severity of Plaintiff's spinal condition. For instance, in 2015, neurologist Steven Otto, M.D., reported that Plaintiff demonstrated full strength and sensation, normal muscle tone and bulk, and the ability to walk without significant difficulty. (Tr. 30, 261-62.) In early 2016, a CT scan was negative for fractures and indicated normal alignment with no definitive neural impingement. (Tr. 30, 279.) In March 2017, Plaintiff reported that his pain was manageable, and certified physician assistant, Amber Beck, PA-C, noted that Plaintiff had a good range of motion in the cervical spine. (Tr. 30, 636-37.) Finally, the ALJ explained that Plaintiff's disc disease and OA were not disabling because Plaintiff had been able to work as a truck driver despite these disorders. (Tr. 31.) Therefore, the ALJ's determination on this point was supported by substantial evidence and the ALJ did not err in evaluating Plaintiff's spine condition.

### B. The ALJ Did not Err in Considering Plaintiff's Seizures

Plaintiff next argues the ALJ erred by ignoring Plaintiff's reported seizures after March 24, 2017. Plaintiff was diagnosed with a seizure disorder. On January 23, 2016, Plaintiff experienced a seizure, witnessed by his wife, and was treated at an emergency department. (Tr. 269.) Plaintiff had indicated this was his first seizure in fifteen years. (*Id.*) However, in February 2016, Plaintiff told Dr. Otto he had been lying about the frequency of his seizures in order to keep working.

(Tr. 632.) On March 24, 2017, Plaintiff denied recent seizures and it appeared that medication was addressing his symptoms. (Tr. 30, 532.) Then, in June and July 2017, Plaintiff reported having a seizure about once a month. (Tr. 563, 566.) The ALJ did not err for several reasons. First, "failure to cite to specific evidence does not indicate that such evidence was not considered," and "an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). The ALJ's failure to discuss the June and July 2017 records does not mean the records were not considered. Second, the records cited by Plaintiff include only his self-reports to physicians. (Tr. 563-64, 566). These reports of seizures lacked objective verification and the ALJ discussed at length the reasons for finding these reports less reliable. (Tr. 30-32.) Finally, the ALJ did find Plaintiff's seizure disorder to be a severe impairment and accounted for it in the RFC. (*Id.*) Therefore, the ALJ did not err in considering Plaintiff's seizures.

### C. The ALJ Erred in Listing Plaintiff's Depression as Non-Severe

An ALJ must determine whether the claimant has a "severe" impairment that lasted, or is expected to last, for at least twelve months. 20 C.F.R. §§ 404.1509, 416.909, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is severe if it imposes more than a minimal limitation on the claimant's ability to function. 20 C.F.R. §§ 404.1521(a), 416.921(a); SSR 96-3p. If the claimant has a severe impairment, the ALJ proceeds to step three of the sequential evaluation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If not, then the ALJ must find claimant not disabled. *Id.* "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and [courts] have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007).

Here, the ALJ did not find Plaintiff's mental impairments severe. (Tr. 28-29.) However, Plaintiff was diagnosed with major depressive disorder in early 2016. (Tr. 544, 546, 549, 556, 558-60.) Dr. Fuge's notes, relied on heavily by the ALJ, also indicate Plaintiff was suffering from symptoms of major depressive disorder and that he had been diagnosed with depression in the past. (Tr. 558-59.) In fact, Dr. Fuge also diagnoses Plaintiff with major depressive disorder in 2017. (Tr. 560.) The court in *O'Conner-Spinner v. Colvin* stated, "[w]e have not found a published opinion from any circuit in which an ALJ declared that major depression was not a severe impairment." 832 F.3d 690, 697 (7th Cir. 2016). While the ALJ makes mention of Plaintiff's depression, the ALJ does not mention Plaintiff's diagnosis of major depression prior to his

4

mother's death or give reasons for discounting the opinions of the doctors who diagnosed Plaintiff with major depression in 2016.

Defendant makes several arguments as to why Plaintiff's mental impairments were not severe. One, Defendant argues Plaintiff's mental impairments were caused by situational stressors such as his mother's death. (Doc. 16, p.6) While it does appear some situational stress such as his mother's death, financial issues, and his relationship with his wife contributed to some of Plaintiff's mental impairments, Plaintiff's impairments were not merely linked to these stressors. Plaintiff was first diagnosed with major depressive disorder in 2016, the year before his mother's death. (Tr. 543-44.) Further, the notes of Dr. Fuge are replete with references to childhood and lifetime trauma, which may have contributed to his major depressive disorder. (Tr. 558-59.)

Two, Defendant argues Plaintiff's impairment lasted less than twelve months. This argument is without merit because as mentioned above, Plaintiff was first diagnosed with major depressive disorder in early 2016. (Tr. 558.) Dr. Fuge also diagnosed Plaintiff with major depression in May 2017. (Tr. 560.) Thus, Plaintiff does meet the twelve-month duration requirement.

Three, Defendant argues Plaintiff had never required or underwent any psychological counseling prior to seeing Dr. Fuge in 2017. (Doc. 16, p. 6); (Tr. 559.) The cases cited by Defendant, *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) and *Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006), note that conservative treatment can be used in finding the claimant lacks credibility. However, the medical records themselves reflect a diagnosis of major depression or major depressive disorder and treatment for such disorder. (Tr. 544, 546, 549, 556, 558-60.) A diagnosis of major depression, "by definition, reflects a practitioner's assessment that the patient suffers from 'clinically significant distress or impairment in social, occupational, or other important areas of functioning." *O'Conner-Spinner*, 832 F.3d at 697 (citing AM. PSYCHIATRIC ASS'N., DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 679-80 (4th ed. text revision 2000)). As such, a diagnosis of major depression in this case evidences more than a minimal limitation in Plaintiff's ability to do basis work activities. *See* 20 C.F.R. 404.1520a(d)(1).

Finally, Defendant argues that in any case, the ALJ found some of Plaintiff's mental impairments severe, proceeded with the sequential evaluation, and the fact she found the mental impairments not severe had no impact on her RFC finding. (Doc. 16, p. 7.) While Plaintiff

contends the ALJ's error requires automatic reversal, citing *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007), automatic reversal is not required. *Rouse v. Berryhill*, No. 4:17 CV 2511 DDN, 2019 WL 13529384, at *5 (E.D. Mo. 2019) ("[m]ore recent cases . . . have tended to hold the ALJ's failure to list all the severe impairments at Step Two is harmless"). The question then becomes whether the ALJ's error was harmless. The Court finds the error is not harmless. Failure to list severe impairments is harmless "so long as the ALJ adequately discusses the effects of those impairments at the subsequent steps." *Id.* Here, the ALJ only mentioned Plaintiff's depression once in analyzing the "Paragraph B" criteria (considering his depression only after his mother's death), did not specifically provide limitations in the RFC for Plaintiff's depression, and failed to adequately discuss his major depression at the subsequent steps of analysis. Therefore, the ALJ's error was not harmless, and remand is warranted.

**II. The ALJ did not Err in Evaluating Plaintiff's Subjective Symptoms**

Plaintiff next makes several arguments that the ALJ erred in failing to properly evaluate his subjective symptoms. Plaintiff's arguments are without merit. One, Plaintiff argues the ALJ erred by making a determination about Plaintiff's demeanor. The Social Security Administration issued a new ruling, SSR 16-3p, which does not use the term credibility. Plaintiff argues because SSR 16-3p eliminated the term "credibility," the ALJ erred by making a determination of Plaintiff's demeanor while testifying. Yet, SSR 16-3p clarifies that the ALJ does need to assess the degree to which the claimant's allegations are consistent with the other evidence of record. Here, the ALJ evaluated the consistency of Plaintiff's testimony with the other evidence in the record. (Tr. 31.) The ALJ found Plaintiff's alleged symptoms inconsistent with the other evidence. Thus, the ALJ did not err on this point.

Two, Plaintiff argues the ALJ erred in considering his work on a dairy farm. However, Plaintiff does not dispute the facts the ALJ relied on, but merely disputes the weight and significance the ALJ assigned to Plaintiff's work on a dairy farm. The ALJ was free to evaluate Plaintiff's subjective complaints along with his reported work history on the farm in making her determination. *See Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). The Court cannot say the ALJ's determination on this point was not supported by substantial evidence.

Three, Plaintiff argues the ALJ discounted his reports of seizures. As discussed more fully above, the argument fails. Plaintiff denied having recent seizures on March 24, 2017. (Tr. 532.)

6

The ALJ's decision on this point was properly supported. The ALJ found Plaintiff's complaints were less than fully reliable because there was an absence of objective medical evidence,[1] indications that Plaintiff responded well to medication, and because of Plaintiff's daily activities and other inconsistencies with Plaintiff's complaints. Additionally, the records cited by Plaintiff, allegedly evidencing seizures, pre-date the March 24, 2017 report in which Plaintiff denied having seizures. (Tr. 532.) Thus, the ALJ did not err in evaluating Plaintiff's subjective complaints of recent seizures. *See Turpin v. Colvin*, 750 F.3d 989, 993-94 (8th Cir. 2014) (an ALJ may weigh the subjective complaints of Plaintiff and discredit them if they are inconsistent with the evidence as a whole).

Finally, Plaintiff argues the ALJ ignored the extent of Plaintiff's work activities after the onset date and the fact that a sleep study confirmed Plaintiff had hypoxia and fatigue. This argument overstates the ALJ's obligation. "[A]n ALJ is not required to discuss every piece of evidence submitted" and "[a]n ALJ's failure to cite to specific evidence does not indicate that such evidence was not considered." *Wildman v. Asture*, 596 F.3d 959, 966 (8th Cir. 2010). The ALJ properly considered Plaintiff's work activity and the other evidence related to Plaintiff's fatigue. As such, the ALJ did not err on this point.

### Conclusion

Having carefully reviewed the record before the Court and the parties' submissions on appeal, it is therefore **ORDERED** that pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings. On remand, the ALJ should clarify, or in the alternative reconsider her findings regarding Plaintiff's major depression at step two. If the ALJ decides Plaintiff's major depression is a severe impairment, she should proceed with the sequential evaluation.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: February 12, 2020

---

[1] Most medical records cited by Plaintiff include his own self-reports to Doctors. They are not substantiated by further medical testing and/or analysis.

7